

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-29-2006

# Brown v. Card Ser Ctr

Precedential or Non-Precedential: Precedential

Docket No. 05-4160

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Brown v. Card Ser Ctr" (2006). *2006 Decisions.* Paper 380.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/380

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4160

———

ELIZABETH BROWN, ON BEHALF OF HERSELF
AND ALL OTHERS SIMILARLY SITUATED,
formerly known as ELIZABETH SCHENCK,

Appellant

v.

CARD SERVICE CENTER;
CARDHOLDER MANAGEMENT SERVICES.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cv-0498)
District Judge: Honorable William H. Yohn, Jr.

———

Argued June 1, 2006

Before: AMBRO, FUENTES, and
GREENBERG, Circuit Judges.

(Filed: September 29, 2006)

Cary L. Flitter (Argued)
Lundy, Flitter, Beldecos & Berger, P.C.
450 N. Narberth Avenue
Narberth, PA 19072

David A. Searles
Donovan Searles, LLC
1845 Walnut Street
Suite 1100
Philadelphia, PA 19103

Attorneys for Appellant

Thomas W. Dymek
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103

Thomas J. Cahill
Joshua M. Rubins (Argued)
Daniel G. Gurfein
Satterlee Stephens Burke & Burke LLP
230 Park Avenue
New York, NY 10169

Attorneys for Appellees

––––

OPINION OF THE COURT

––––

FUENTES, Circuit Judge.

Seeking to recover what it considered a bad debt, Card Service Center sent Elizabeth Brown a collection letter telling her that unless she made arrangements to pay within five days, the matter "could" result in referral of the account to an attorney and "could" result in "a legal suit being filed." Brown sued, claiming that because Card Service Center had no intention of referring her account to an attorney and no intention of filing a law suit, the

2

letter violates the Fair Debt Collection Practices Act's ban on false, misleading or deceptive communications. The District Court dismissed Brown's suit, concluding that because "[t]he letter neither states nor implies that legal action is imminent, only that it is possible," Brown had failed to state a claim upon which relief could be granted. We disagree, and for the reasons that follow we vacate the District Court's judgment and remand for further proceedings.

## I. Background

Card Service Center and Cardholder Management Services (collectively, "CSC") are debt-collection firms. In February of 2004, CSC sent Brown a collection letter (the "CSC Letter") demanding payment of a delinquent credit card balance of $1,874, which it stated was due. The letter threatened referral of Brown's account to CSC's attorney if payment was not made within five days. In relevant part, the letter reads:

> You are requested to contact the Recovery Unit of the Card Service Center . . . to discuss your account.
>
> Refusal to cooperate could result in a legal suit being filed for collection of the account.
>
> You now have five (5) days to make arrangements for payment of this account. Failure on your part to cooperate could result in our forwarding this account to our attorney with directions to continue collection efforts.

(JA 1.) Though Brown did not make arrangements for payment on her delinquent account within five days, CSC did not institute a suit or otherwise enlist an attorney to assist with its collection efforts. Rather, Brown's decision not to comply with CSC's request resulted only in her receiving additional debt-collection letters from CSC.

In February of 2005, Brown filed suit against CSC in the United States District Court for the Eastern District of Pennsylvania on behalf of herself and all other similarly situated Pennsylvania consumers. In her complaint Brown alleged that the CSC Letter contained "false and misleading" statements "designed

3

to coerce and intimidate the consumer . . . by false threat" and that the complaint suggested a deadline for debtor action that was "false and overstated." (Amend Compl. ¶¶ 11, 13, 15.) In support of this claim, Brown alleged that the 5-day deadline was illusory because CSC never intended to bring suit against her or to refer her debt–or that of the members of her putative class–to an attorney.

In response to the complaint, CSC filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint for failure to state a claim under the Fair Debt Collection Practices Act (the "FDCPA" or the "Act"), 15 U.S.C. § 1692 <u>et seq</u>. The District Court granted the motion without prejudice in June of 2005. The District Court's order dismissing the complaint, which was amended by a second order in August of 2005, granted Brown through the end of September to conduct further investigation so that she might amend her complaint, with the caveat that if she failed to do so, the June dismissal would automatically become a dismissal with prejudice. Brown opted not to amend her complaint, and the dismissal became final. This appeal followed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the grant of a motion to dismiss. <u>Delaware Nation v. Pennsylvania</u>, 446 F.3d 410, 415 (3d Cir. 2006). When considering an appeal from a Rule 12(b)(6) dismissal, we must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 311 F.3d 198, 215 (3d Cir. 2002). In doing so, we must determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. <u>Pinker v. Roche Holdings, Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. Analysis

Brown maintains that the CSC Letter ran afoul of § 1692e of the FDCPA, which reads in relevant part:

### § 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

**(5)** The threat to take any action that cannot legally be taken or that is not intended to be taken.

Because CSC qualifies as a "debt collector" under the Act, see 15 U.S.C. § 1692a(6), to the extent the CSC Letter is "false, deceptive, or misleading" or constitutes a "threat to take any action . . . not intended to be taken," it violates § 1692e.

### A.     FDCPA Background

Congress enacted the FDCPA in 1977 after noting the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At the time the Act was being considered, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Id. A significant purpose of the Act is not only to eliminate abusive practices by debt collectors, but "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

In its findings Congress observed that "[e]xisting laws and procedures" enacted to remedy the injuries occasioned by abusive debt collectors "are inadequate to protect consumers." 15 U.S.C. § 1692(b). Accordingly, the Act provides consumers with a private cause of action against debt collectors who fail to comply with the Act. 15 U.S.C. § 1692k. A prevailing plaintiff under the Act is entitled to an award of damages, costs of suit and reasonable attorneys' fees. Id.

Because the FDCPA is a remedial statute, Hamilton v. United Healthcare of La., 310 F.3d 385, 392 (5th Cir. 2002), we construe its language broadly, so as to effect its purpose, See Stroh

5

v. Director, OWCP, 810 F.2d 61, 63 (3d Cir. 1987).  Accordingly, in considering claims under another provision of the FDCPA, we have held that certain communications from lenders to debtors should be analyzed from the perspective of the "least sophisticated debtor."  See Wilson v.Quadramed Corp., 225 F.3d 350, 354 (applying the perspective of the least sophisticated debtor to the notice provision of the Act, § 1692g) (citation omitted); Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) ("Statutory notice under the Act is to be interpreted from the perspective of the 'least sophisticated debtor.'").

Analyzing lender-debtor communications from this perspective is consistent with "basic consumer-protection principles."  United States v. Nat'l Fin. Servs., 98 F.3d 131, 136 (4th Cir. 1996).  As the Second Circuit has observed, "[t]he basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.  This standard is consistent with the norms that courts have traditionally applied in consumer-protection law."[1]  Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).  That it may be obvious to specialists or the particularly sophisticated that a given statement is false or inaccurate does nothing to diminish that statement's "power to deceive others less experienced."  Federal Trade Comm'n v. Standard Educ. Soc'y, 302 U.S. 112, 116 (1937).  As Justice Black has observed, our laws "are made to protect the trusting as well as the suspicious," and this is particularly the case within the realm of consumer protection laws.  Id.  Bearing all of this in mind, we conclude that any lender-debtor communications potentially giving rise to claims under the FDCPA, such as the CSC Letter, should be analyzed from the perspective of the least sophisticated debtor.

---

[1] For our purposes, "least sophisticated debtor" and "least sophisticated consumer" can be used interchangeably.  Our analysis of the least sophisticated debtor/consumer standard focuses on the level of sophistication, rather than whether the purported debtor actually owes the debt claimed.  See Graziano, 920 F.2d at 111 n.5 (noting the distinction in terminology, but ultimately deciding to employ "least sophisticated debtor" in a Third Circuit FDCPA case).

The least sophisticated debtor standard requires more than "simply examining whether particular language would deceive or mislead a reasonable debtor" because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor. Quadramed, 225 F.3d at 354 (internal quotation marks and citation omitted). This lower standard comports with a basic purpose of the FDCPA: as previously stated, to protect "all consumers, the gullible as well as the shrewd," "the trusting as well as the suspicious," from abusive debt collection practices. However, while the least sophisticated debtor standard protects naive consumers, "it also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Quadramed, 225 F.3d at 354-55 (internal quotation marks and citation omitted).[2]

### B. Applying the Least Sophisticated Debtor Standard to the CSC Letter

In its thorough analysis, the District Court determined that, even accepting all of Brown's factual allegations as true and

---

[2] Other Courts of Appeals have also approached the adjudication of matters under the Act from the perspective of the least sophisticated debtor or consumer. See, e.g., Swanson v. Southern Or. Credit Serv., 869 F.2d 1222, 1226-30 (9th Cir. 1988) (adopting the least sophisticated debtor standard in a case relating to FDCPA claims under §§ 1692a, 1692c and 1692e); Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993) ("We apply an objective test based on the understanding of the 'least sophisticated consumer' in determining whether a collection letter violates section 1692e."); Smith v. Transworld Sys., 953 F.2d 1025, 1028-30 (6th Cir. 1992) (applying the least sophisticated consumer standard in a case relating to FDCPA claims under §§ 1692e and 1692g); Jeter v. Credit Bureau, 760 F.2d 1168, 1175 (11th Cir. 1985) (adopting the least sophisticated consumer standard in addressing FDCPA claims under the §§ 1692d and 1692e); Nat'l Fin. Servs., 98 F.3d at 135-36, 139 (citing with approval the district court's application of the least sophisticated consumer standard to a debtor's § 1692e claim).

drawing all reasonable inferences in her favor, no reasonable reading of her complaint could entitle her to relief. In reaching this conclusion, the District Court emphasized that the CSC Letter employed the conditional term "could" as opposed to the affirmative term "will."[3] The District Court observed that the CSC Letter "neither states nor implies that legal action is imminent, only that it is possible." Brown v. Card Serv. Ctr., No. 05-cv-0498, 2005 U.S. Dist. LEXIS 12810, at *23 (E.D. Pa. Jun. 27, 2005). As a result, the District Court concluded that the CSC Letter "poses no 'threat' pursuant to § 1692e(5), and because the letter simply advises plaintiff of options available to CSC, the letter is not 'false, deceptive, or misleading' under § 1692e, even if action were not intended to be taken." Id. The District Court found the CSC Letter in compliance with the FDCPA because it merely stated what CSC could do, if it so chose. The District Court drew a sharp contrast between the CSC Letter and debt-collection letters that other courts have held to be in violation of the Act because those letters made false claims about what debt collectors would do if a given debtor failed to respond. See, e.g., Crossley v. Lieberman, 868 F.2d 566, 567 (3d Cir. 1989) (finding an FDCPA violation where a letter falsely stated, "Unless I receive payment in full within one week from the date of this letter, I will be compelled to proceed with suit against you."). Though we express no opinion as to whether the language of the CSC Letter constitutes a "threat" under § 1692e(5), we believe that the facts as alleged in Brown's complaint, if proven, could render the CSC Letter a "deceptive" or "misleading" communication, in violation of § 1692e.

We disagree with the District Court because we conclude that it would be deceptive under the FDCPA for CSC to assert that it could take an action that it had no intention of taking and has never or very rarely taken before. The CSC Letter highlights two possible outcomes for debtors failing to respond within five days: the commencement of a lawsuit or the referral of the debt to CSC's attorney. In her complaint, Brown alleges that CSC never intended

---

[3] For example, the CSC Letter states, "[r]efusal to cooperate could result in a legal suit being filed for collection of the account" and "Failure on your part to cooperate could result in our forwarding this account to our attorney with directions to continue collection efforts" (emphases added).

to file a suit against her for collection, never had any intention of referring her case to its attorney, and that as a matter of course, CSC does not "refer class member's [sic] alleged debts to their attorney for prosecution, but only refer[s] the alleged debt(s) to another collection agency." (Amend Compl. ¶ 17)  In light of these allegations, Brown has stated a claim under § 1692e upon which relief can be granted.

Upon reading the CSC Letter, the least sophisticated debtor might get the impression that litigation or referral to a CSC lawyer would be imminent if he or she did not respond within five days. We do not believe that such a reading would be "bizarre or idiosyncratic," see Quadramed, 225 F.3d 354, and we thus conclude that further proceedings are warranted to determine if such a reading is "reasonable" in light of the facts of this case.  A debt collection letter is deceptive where "it can be reasonably read to have two or more different meanings, one of which is inaccurate." Id. (citation omitted).  If Brown can prove, after discovery that CSC seldom litigated or referred debts such as Brown's and those of the putative class members to an attorney, a jury could conclude that the CSC Letter was deceptive or misleading vis-à-vis the least sophisticated debtor.

The Federal Trade Commission's commentary (the "FTC Commentary") to the FDCPA further supports this conclusion. The FTC Commentary observes that a debt collector "may state that a certain action is possible, if it is true that such action is legal and is frequently taken by the collector or creditor with respect to similar debts," but where the debt collector "has reason to know there are facts that make the action unlikely in the particular case, a statement that the action was possible would be misleading."  53 Fed. Reg. 50097, 50106 (1988).  In other words, were it proven that the CSC had reason to know that the legal action described in its letter to Brown was unlikely, its statement in the CSC Letter that it was possible could be deemed misleading.  In this sense, the facts alleged by Brown fall squarely within the scope of the behavior proscribed by the FTC language.  Though the FTC Commentary does not have the force of law and is "not entitled to deference in FDCPA cases except perhaps to the extent [its] logic is persuasive," Dutton v. Wolpoff & Abramson, 5 F.3d 649, 654 (3d

9

Cir. 1993), in the context of this case we find it persuasive.[4]  We are therefore satisfied that the facts pled by Brown, if proven, state a claim upon which a court might grant relief.

Accordingly, because a court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), the District Court erred in dismissing Brown's complaint.  We therefore vacate the judgment of the District Court and remand for further proceedings consistent with this opinion.

———

[4] We note that Kaltenbach v. Richards, No. 05-30132, 2006 WL 2588994, *2 (5th Cir. Sept. 11, 2006) supports our decision to defer to the FTC's persuasive interpretation in this case.  We are mindful, however, that the standard applied in Kaltenbach is more deferential than ours in Dutton v. Wolpoff & Abramson, 5 F.3d 649, 654 (3d Cir. 1993).  Kaltenbach relies on Fifth Circuit precedent that courts "must defer to [an] agency's interpretation of a statute that it administers if (1) Congress has not spoken directly to the issue; and (2) the agency's interpretation is based on a permissible construction of the statute."  Kaltenbach, 2006 WL 2588994, *2 (citing Walton v. Rose Mobile Homes, 298 F.3d 470, 475 (5th Cir. 2002)) (internal quotation marks omitted).