Daniels v. Davis Davis Attorneys, P.C.

C.P. of Allegheny County, no. AR10-006276.

*Clayton S. Morrow,* for plaintiff.

*Thomas E. Reilly,* for defendant.

WETTICK JR., *J.,* February 18, 2011—In prior proceedings at AR10-004223 ("the underlying action"), Commonwealth Financial Systems ("Commonwealth Financial") sued William L. Daniels (plaintiff in the present case) for money allegedly owed on a credit card. Commonwealth Financial was represented by Davis Davis Attorneys, P.C. ("Davis law firm").

In the present proceedings, Daniels has sued the Davis law firm for alleged violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, based on alleged misrepresentations in the complaints filed in the underlying action regarding claims for attorney fees.[1] The Davis law firm has filed preliminary objections

---

1. The parties have not cited, and I am not aware of, any Pennsylvania

seeking dismissal of plaintiff's second amended complaint. These preliminary objections are the subject of this opinion and order of court.[2]

Plaintiff's claims are based on §§1692e and 1692f of the FDCPA.[3] Section 1692e bars a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2)(A) expressly prohibits "[t]he false representation of the character, amount, or legal status of any debt."

Section 1692f bars a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt." Violations under this section include:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

In its preliminary objections, the Davis law firm raises two grounds for dismissal of plaintiff's second amended complaint. First, the Davis law firm contends that allegations within a complaint or other pleading cannot be the basis of any claims based on §§1692e or 1692f. According to the Davis law firm, pleadings in state court collection proceedings are governed by the rules of civil

---

state court opinions which have addressed any aspect of the FDCPA.

2. The law is settled that the FDCPA applies to attorneys who regularly engage in consumer debt collection activity even when the activity consists of litigation. *Heintz v. Jenkins*, 115 S.Ct. 1489 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1031-32 (9th Cir. 2010).

3. Under §1692k, any debt collector who fails to comply with the provisions of the FDCPA will be liable for any actual damage sustained, such additional damages as the court may allow, but not exceeding $1,000, and costs of the action together with reasonable attorney fees as determined by the court.

procedure of the state in which the claim is made.

Second, even assuming that the claims under the FDCPA may be based on allegations within a complaint, the misrepresentations described in Commonwealth Financial's complaints filed in the underlying action do not violate the FDCPA.

## I.

I initially consider the Davis law firm's contention that the representations which are the basis of plaintiff's claims do not violate the FDCPA.

In order to prevail on a FDCPA claim, a plaintiff must prove that (1) he or she was the object of collection activity arising from consumer debt; (2) the defendant was a debt collector as defined by the FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA. *Som v. Daniels Law Offices, P.C.*, 573 F.Supp.2d 349, 356 (D. Mass. 2008).[4]

In this case, plaintiff was the object of collection activity arising from consumer debt and the Davis law firm was a debt collector as defined by the FDCPA. The parties' dispute is over whether the Davis law firm engaged in an act or omission prohibited by the FDCPA.

In paragraph 7 of the initial complaint filed in the underlying action, Commonwealth Financial alleges that an outstanding balance of $9,367.75 remains due and owing, and in paragraph 10 Commonwealth Financial alleges that "[u]nder the terms of Exhibit 'A', defendant agreed to pay plaintiff's costs of collection, including

---

4. The FDCPA imposes strict liability on debt collectors for their violations; a plaintiff need not show that the debt collector intended to violate the Act. See *Som, Id.*, and cases cited therein.

attorneys fees, which plaintiff avers to be $1,873.55." In its prayer for relief, Commonwealth Financial sought judgment in the amount of $11,241.30 plus interest from December 4, 2007 and costs.

In its amended and second amended complaints filed in the underlying action, plaintiff alleges in paragraph 7 that the outstanding balance was $9,367.75, and in paragraph 10, plaintiff alleges: "Under the terms of Exhibit 'A', defendant agreed to pay plaintiff's costs of collection, including attorneys fees, which plaintiff avers to be $4,361.71." In the prayer for relief, plaintiff demanded judgment in the sum of $13,729.46 plus interest and costs.[5]

The amended and second amended complaints were filed in response to Daniels' preliminary objections raising the failure to attach documents showing a chain of title from the issuer of the credit card (Citibank) to Commonwealth Financial, the failure to attach documents supporting the claims, and an improper verification. Eventually, Commonwealth Financial discontinued the case in response to Daniels' motion seeking a court order dismissing the complaint with prejudice.

Commonwealth Financial based its claims for costs of collection, including attorney fees, on the following provision in the Credit Card Agreement, complaint, Ex. B at page 14:

Collection costs: If we refer collection of your account to a lawyer who is not our salaried employee, you are

---

5. In the first complaint the amount sought as costs of collection, including attorney fees, was 20 percent of the outstanding balance. In the first and second amended complaints, the amount sought for costs of collection, including attorney fees, exceeded 40 percent of the outstanding balance.

liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

The claims for violations of the FDCPA raised in Daniels' complaint filed in the present lawsuit are based on the statements in the complaints filed in the underlying lawsuit regarding the alleged agreement to pay counsel fees. In its initial complaint in the underlying action, Commonwealth Financial alleged that Daniels agreed to pay costs of collection, including counsel fees, of $1,873.55. In its amended and second amended complaints, Commonwealth Financial alleged that Daniels agreed to pay costs of collection, including counsel fees, of $4,361.71.

Under §1692f(1), it is an unfair practice to collect any amount "not expressly authorized" by the agreement creating the debt. There is no writing supporting the statements in paragraphs 10 of the initial and amended complaints that Daniels agreed to pay $1,873.55 (initial complaint) or that Daniels agreed to pay $4,361.71 (amended and second amended complaints).

Under §1692e, a debt collector may not falsely represent the amount of any debt. The allegations in paragraphs 10 of the three complaints are false representation of the amount of any debt within the meaning of §1692e(2)(A).

The only writing upon which the Davis law firm relies is the Collection Costs provision at page 4 of this opinion which states that if collection of the account is referred to a lawyer who is not a salaried employee, the cardholder will be liable "for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law."

This Collection Costs provision does not expressly authorize the collection of either the amount of counsel fees set forth in paragraph 10 of the initial complaint — $1,873.55 or the amount set forth in paragraph 10 of the amended complaints — $4,361.71. This provision does not include any criteria that would allow Commonwealth Financial, Daniels, or any third person to establish from a review of the writing a dollar amount of counsel fees that Daniels agreed to pay. Also, this writing does not give Commonwealth Financial the authority to decide unilaterally an amount that is due under the Collection Costs provision. Yet, this is what occurred. The first time around (i.e., the initial complaint), Commonwealth Financial unilaterally chose the amount of $1,873.55. The second and third times around (the amended and second amended complaints) Commonwealth Financial unilaterally chose the sum of $4,361.71.

Also, the initial and amended complaints do not seek an amount of attorney fees that, on its face, appears to reflect the fair value of the work performed at the time the claim for a specific dollar amount was made (i.e., as of the date the complaint was verified). At the time the underlying lawsuit was filed through a complaint claiming that costs of collection including counsel fees of $1,873.55, in all likelihood the attorney with the Davis law firm handling the case had expended very little time on this matter. It appears that the preparation of the complaint consisted of filling in the blanks of a form complaint based on very limited information from the client.[6]

---

6. The complaint also misrepresented the character of the debt. It would appear that through paragraph 10 Commonwealth Financial is seeking only counsel fees although the allegation is costs of collection, including attorney fees. Furthermore, a claim for costs of collection misrepresents the claim because the agreement provides only for

The docket entries show the complaint was filed on May 25, 2010, defendant filed preliminary objections on June 22, 2010, and on June 30, 2010, plaintiff filed an amended complaint which included certain documents (Credit card agreement-Exhibit A; a one-page document allegedly showing the outstanding balance-Exhibit B; and a bill of sale, assignment and assumption agreement-Exhibit C). In this amended complaint, the demand for costs of collection, including attorney fees, increased to $4,361.71.[7] This amount would not appear to have any relationship to the time counsel expended. Furthermore, it is unclear why Daniels should be paying for counsel fees incurred in Commonwealth Financial's attempt to correct deficiencies in the initial complaint.

The Davis law firm contends that Daniels has misread the initial and amended complaints filed in the underlying action. According to the Davis law firm, the only sum certain in these complaints that Commonwealth Financial was seeking to recover was the outstanding balance. If Daniels had actually read the allegations in the complaint, he would have understood that Commonwealth Financial was saying that it would be for a court to decide the amount of counsel fees that Daniels should pay.

The Davis law firm correctly states that Commonwealth Financial did not allege that Daniels agreed to pay the costs of collection in the amount of $1,873.55 or in the amount of $4,361.71, but instead that Daniels agreed to pay the costs of collection "which plaintiff avers to be "$1,873.55/$4,361.71." However, either provision is a

---

reasonable attorney fees plus costs and expenses of any legal action.

7. Plaintiff filed a second amended complaint on July 16, 2010, in which it again averred that Daniels agreed to pay "plaintiffs costs of collection, including attorneys fees" in the amount of $4,361.71. Commonwealth Financial's second amended complaint at ¶10.

statement of Commonwealth Financial as to a specific amount that is owing. Neither suggests that the Davis law firm is looking to a court to decide the amount that is due under the credit card agreement for collection of costs, including attorney fees. Also, whenever allegations are susceptible to more than one meaning, settled case law holds that alleged violations of the FDCPA are to be examined from the prospective of the "least sophisticated consumer." *Brown v. Card Service Center*, 464 F.3d 450, 453-54 (3d Cir. 2006); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

The Davis law firm states that in the initial complaint filed in the underlying action, it used a formula for calculating attorney fees — 20 percent of the outstanding balance. The Davis law firm contends that the case law permits the use of a percentage of the debt to collect "reasonable attorney fees." Even assuming this is so, the Collection Costs provision upon which the Davis law firm relies refers only to reasonable attorney fees. It does not state that attorney fees will be calculated based on an undisclosed percent of the debt.

The Davis law firm also contends that courts should not permit claims under the FDCPA to be based on pleadings governing counsel fees because at the end of the day courts will determine the amount of counsel fees that are owed.

While this will be true when the cardholder is represented by counsel, in most cases the cardholder is not represented by counsel and the inclusion in the complaint of a specific amount not expressly authorized in the cardholder agreement will frequently inure to the benefit of the assignee of the issuer of the credit card.[8]

---

8. I recognize that in this lawsuit it is likely that Daniels did not

Upon receipt of a complaint, some defendants will pay the full amount that is sought. In this instance, the assignee of the credit card issuer would have collected money to which it is not entitled because of the inclusion within the complaint of an amount that is not specifically authorized by the agreement.

Receipt of the complaint may trigger negotiations over the amount of money that the assignee of the credit card issuer will accept in order to resolve the claim. Bargaining that includes significant counsel fees (not expressly provided for in the agreement) will differ from bargaining where a claim does not include attorney fees.

More than 80 percent of credit card litigation is resolved through a default judgment. If the complaint improperly includes claims for counsel fees that are not provided for in the credit card agreement, the amount of the default judgment will very likely include these claims for counsel fees.

My office reviewed the first fifteen lawsuits filed in this court in 2010 by the Davis law firm on behalf of Commonwealth Financial Systems. Three of these lawsuits are the underlying lawsuit in the present case, a second lawsuit at AR10-004226 against Mr. Daniels which was discontinued with prejudice by court order, and one of the lawsuits described in footnote 12, infra. In ten of the remaining twelve lawsuits, a default judgment was entered in favor of Commonwealth Financial:

---

sustain any losses from the misrepresentations regarding counsel fees. However, it is the purpose of the FDCPA to eliminate abusive debt collection practices by debt collectors (§1692d). One strategy which the FDCPA uses for discouraging the use of unfair debt collection practices is to allow consumers who have not sustained any losses from abusive debt collection practices to recover up to $1,000 and counsel fees. See §1692k.

390

Case Number | Complaint Filed

AR10-005388 *Commonwealth Financial Systems v. Grimm* (7/02/2010)

AR10-005387 *Commonwealth Financial Systems v. Walker* (7/02/2010)

AR10-005386 *Commonwealth Financial Systems v. Slagle* (7/02/2010)

AR10-004398 *Commonwealth Financial Systems v. Struzynski* (6/01/2010)

AR10-004243 *Commonwealth Financial Systems v. Pietrusinski* (5/25/2010)

AR10-004211 *Commonwealth Financial Systems v. Rozman* (5/24/2010)

AR10-004056 *Commonwealth Financial Systems v. Fielding* (5/18/2010)

AR10-004055 *Commonwealth Financial Systems v. Martin* (5/18/2010)

AR10-004054 *Commonwealth Financial Systems v. Remis* (5/18/2010)

AR10-004052 *Commonwealth Financial Systems v. Barnard* (5/18/2010)

In each of these 10 lawsuits in paragraph 10 of the complaint, Commonwealth Financial claimed a specific dollar amount for counsel fees. In each case, the dollar amount was 20 percent of the balance allegedly owed. In seven of the 10 lawsuits, the praecipe for the entry of a default judgment included the dollar amount set forth in paragraph 10.

In the remaining three cases described below, the amount of the counsel fees included in the praecipe for the entry of a default judgment exceeded the amount in paragraph 10:

AR10-004052-balance (paragraph 7)-$15,889.24; attorney fees (paragraph 10)-$3,177.85; praecipe-attorney

fees of $4,512.11.

AR10-004055-balance (paragraph 7)-$3,671.19; attorney fees (paragraph 10)-$734.24; praecipe-attorney fees of $1,065.93.

AR10-004243-balance (paragraph 7)-$8,702.88; attorney fees (paragraph 10)-$1,740.76; praecipe-attorney fees of $2,629.50.

Furthermore, in nine of the 10 lawsuits listed above, the praecipe for entry of a default judgment included interest charges that exceeded the amount sought in the complaint. For example, in the case at the top of the list (AR 10-005388), the body of the complaint sought a balance due of $1,639.56, attorney fees of $327.91, and 6 percent interest from 6/8/10 (Wherefore Clause-$1,967.47 plus interest from 6/8/10):

7. The outstanding balance which remains due and owing to the plaintiff by the defendant is $1,639.56 as set forth in the statement of account which is marked Exhibit "B" attached hereto and made a part hereof.

8. Demands for payment have been made upon the defendant, but the defendant has failed or refused to pay.

9. Interest accrues on the aforesaid outstanding balance at the rate of 6 percent per annum from June 8,2010.

10. Under the terms of Exhibit "A," defendant agreed to pay plaintiff's costs of collection, including attorneys fees, which plaintiff avers to be $327.91.

Wherefore, plaintiff demands judgment against the defendant in the sum of $1,967.47 plus interest from June 8, 2010, plus costs.

A default judgment was entered on August 25, 2010

in an amount of $6,698.46 plus 6 percent interest from August 23, 2010 pursuant to the following praecipe for entry of a default judgment:

IN THE COURT OF COMMON PLEAS OF
ALLEGHENY COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH FINANCIAL | ) | CIVIL DIVISION, ARBITRATION |
| SYSTEMS successor in interest to. | ) | AND STATUTORY APPEALS ONLY |
| CITIBANK, | ) | |
| Plaintiff, | ) | NO.: AR-10-005388 |
| vs. | | |
| JENNIFER SHOTTS GRIMM, | | |
| Defendant. | | |

TO: PROTHONOTARY

SIR:

Please enter judgment by default against the above-named defendant, JENNIFER SHOTTS GRIMM for failure to plead.

| | |
|---|---|
| Principal claimed in complaint | $1,639.56 |
| with interest at the rate of 6% | |
| per annum from June 8, 2010 through | |
| August 23, 2010 | $4,730.99 |
| Attorney's Fees | $327.91 |
| TOTAL | $6,698.46 |

with continuing interest on the judgment amount of $6,698.46 at the rate of 6% per annum from August 23, 2010, plus costs.

In eight of the nine other cases, the default judgments included interest that exceeded the amount set forth in the complaint. See Table 1 below which (1) in Column 3 sets forth the rate of interest, the date interest begins to run, and the date interest ceases to run (as set forth in the plaintiff's praecipe for entry of a default judgment) and (2) in Column 6 sets forth the interest claimed in the praecipe.

## TABLE 1

| AR-10- | Complaint | | | Default Judgment | | |
|---|---|---|---|---|---|---|
| | 1 Balance | 2 Attorney Fees | 3 Interest | 4 Principal | 5 Attorney Fees | 6 Interest claimed |
| 005388 | 1,639.56 | 327.91 | 6% 6/08/10 - 8/23/10 | 1,639.56 | 327.91 | 4,730.99 |
| | Wherefore: 1,967.47 | | | Total: 6,698.46 | | |
| 004054 | 9,867.01 | 1,973.40 | 6% 5/20/09 - 8/18/10 | 9,867.01 | 1,973.40 | 2,691.57 |
| | Wherefore: 11,840.41 | | | Total: 14,531.98 | | |
| 004056 | 2,901.07 | 580.21 | 6% 6/27/08 - 8/18/10 | 2,901.07 | 580.21 | 681.99 |
| | Wherefore: 3,481.28 | | | Total: 4,163.27 | | |
| 004211 | 8,678.04 | 1,735.61 | 6% 9/18/09 - 8/24/10 | 8,678.04 | 1,735.61 | 2,264.49 |
| | Wherefore: 10,413.65 | | | Total: 12,678.14 | | |
| 005386 | 5,868.77 | 1,173.75 | 24.9% 1/30/08 - 8/19/10 | 5,868.77 | 1,173.75 | 5,097.17 |
| | Wherefore: 7,042.52 | | | Total: 12,139.69 | | |
| 004398 | 6,425.44 | 1,285.09 | 6% 4/02/08 - 7/21/10 | 6,425.44 | 1,285.09 | 1,606.09 |
| | Wherefore: 7,710.53 | | | Total: 9,316.62 | | |
| 005387 | 5,373.64 | 1,074.73 | 29.99% 6/02/08 - 9/27/10 | 5,373.64 | 1,074.73 | 6,866.61 |
| | Wherefore: 6,448.37 | | | Total: 13,314.98 | | |
| 004052 | 15,889.24 | 3,177.85 | 6% 8/12/08 - 7/22/10 | 15,889.24 | 4,512.11 | 3, 660.64 |
| | Wherefore: 19,067.09 | | | Total: 24,061.99 | | |
| 004055 | 3,671.19 | 734.24 | 6% 6/02/08 - 6/29/10 | 3,671.19 | 1,065.93 | 948.95 |
| | Wherefore: 4,405.43 | | | Total: 5,686.07 | | |

In deciding whether the allegations regarding counsel

fees in the complaints filed by Commonwealth Financial in the underlying litigation violated §§1692e and 1692f, I find to be very persuasive the reasoning of the court in *Stolicker v. Muller, Muller, Richmond, Harms, Myers and Sgroi, P.C.*, No. 1:04-CV-733, 2005 WL 2180481 (W.D. Mich. Sept. 9, 2005), a suit alleging violations of the FDCPA by a cardholder against the law firm that had sued the cardholder in state court proceedings. The credit card agreement provided that if the holder defaults, he or she agrees to pay reasonable attorney fees.

In the state court proceedings, in the body of the complaint, the plaintiff sued to collect $3,985.25 in damages, costs, and attorney fees. The amount included $776.68 as attorney fees (25 percent of the principal debt) "pursuant to the agreement made by defendant." *Id.* at *1.

In the federal court proceedings, the court stated that the central issue in the case was whether the Muller law firm violated the FDCPA by filing, in state court, a complaint and affidavit in support of a default judgment which included a request for a liquidated attorney fee. The court ruled in favor of the cardholder; it held that the inclusion of a liquidated sum as attorney fees with the principal debt owed altered the terms of the contract and, thus, violated the FDCPA. The contract which the cardholder signed required that she pay a "reasonable attorney fee, not $776.68 or any other liquidated amount." *Id.* at *4. The cardholder did not agree to pay a specific percentage contingent fee or a liquidated amount of attorney fees; a reasonable attorney fee cannot be a liquidated sum. The court, citing other case law, stated that the FDCPA would provide little protection to a debtor if, in agreeing to pay "reasonable collection costs," a debtor was held to have

agreed to pay whatever percentage fee a debt collection service happened to charge. *Id.*

In response to the law firm's argument that the cardholder's agreement to pay reasonable attorney fees permitted the credit card company to select a reasonable amount and include the amount with the principal debt sought, the court stated:

> The court does not follow the Muller law firm's logic which would allow Capital One and its collection attorney, independent of the debtor, to determine what they believed was a reasonable attorney fee and then request that amount in a suit to collect the debt. Such a course of action alters the contract signed by Stolicker. More importantly for this matter, the alteration of the terms of the contract misrepresents the amount of the debt owed and the compensation which may be received for the collection of the debt in violation of §1692e(2) (A), (B). *Id.*

Other cases that have found violations of the FDCPA based on claims for attorney fees include *Som v. Daniels Law Offices, P.C.*, supra, 573 F.Supp.2d 349; *Munoz v. Pipestone Financial, LLC*, 513 F.Supp.2d 1076 (D. Minn. 2007); *Foster v. D.B.S. Collection Agency*, 463 F.Supp.2d 783, 802 (S.D. Ohio 2006); *Pettway v. Harmon Law Offices, P.C.*, No. 03-CV-10932-RGS, 2005 WL 2365331 (D. Mass. Sept. 27, 2005); and *Kojetin v. CU Recovery, Inc.*, No. CV. 97-2273 (JRT/RLE), 1999 WL 1847329 (D. Minn. March 29, 1999).

The Davis law firm relies on *Cisneros v. Neuheisel Law Firm, P.C.*, 2008 WL 65608 (D. Ariz. 2008). However, that case supports plaintiff's position that the inclusion of a specific sum for counsel fees in the body of the complaint

violates the FDCPA. In *Cisneros*, the cardmember agreement provided for payment of a reasonable attorney fee. In the body of the complaint filed in the underlying state court action, the assignee of the issuer sought only reasonable attorney fees. In the prayer for relief, the assignee sought '"reasonable attorney's fees' of 'at least $1,390.71 if this matter is contested' or '$1,390.71 if this matter proceeds to Judgment by default.'" *Id.* at *1. (This fee request equaled 25 percent of the principal balance owed.) Plaintiff relied on *Stolicker* and similar cases in which a specific sum for counsel fees was included in the body of the complaint. However, the court ruled that those cases do not apply where, as in this case, the plaintiff sought reasonable attorney fees in the body of the complaint and only included a specific amount in the prayer for relief. According to the court, this format must be viewed as an "aspirational" prayer which ultimately rests upon the discretion of the court. *Id.* at *3.

Also see *Sayyed v. Wolpoff & Abramson, LLP*, 733 F.Supp.2d 635, 647-49 (D. Md. 2010), and cases cited therein.[9]

## II.

I next consider the Davis law firm's contention that a claim of a violation of the FDCPA cannot be based on allegations within the pleadings. I disagree. The

---

9. I question whether this case law provides the protections that the FDCPA is intended to provide to consumers. Most consumers will not read the complaint as seeking an unliquidated amount for counsel fees and, thus, will believe, in making payment decisions, that the assignee of the credit card issuer is claiming that the specific amount in the prayer for relief is owed. Furthermore, if complaints seeking a liquidated amount for counsel fees in the prayers for relief are permitted where the agreement calls for reasonable attorney fees, most likely the default judgments are going to include these amounts.

development of the FDCPA coupled with its clear language requires a construction that a violation of the act may be based on allegations within pleadings.

The FDCPA prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices. The Act has always defined a debt collector to include any person "who regularly collects or attempts to collect, directly or indirectly, debts owed [to another]...." 15 U.S.C. §1692a(6).[10] However, the definition of debt collector in the act, as initially enacted in 1977, contained an express exemption for lawyers. That exemption said that the term debt collector does not include "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client," PL95-109, 9/20/77, 91 Stat. 874 §803(6)(F).

In 1986 (P99-361, 100 Stat. 768 (7/9/86)), Congress repealed this exemption. In 1995, in *Heintz v. Jenkins,* supra, 115 S.Ct. 1489, the United States Supreme Court addressed whether the act applies to a lawyer who regularly, through litigation, tries to collect consumer debts. In that case, Jenkins brought a suit against a lawyer and his law firm under the FDCPA based on allegations that the lawyer violated the FDCPA through a collection letter sent to Jenkins seeking money that was not owed.

The court ruled that the FDCPA applies to litigating activities of lawyers for "two rather strong reasons." *Id.* at 1490. First, in ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings comes within the definition of a debt collector. Second, Congress repealed the exemption for lawyers in

---

10. The term debt is defined to cover only consumer debt. 15 U.S.C. §1692a(5).

1986. This repeal expressed a Congressional intent that lawyers be subject to the act when they meet the debt collector definition. *Id.* at 1491.

The *Heintz* litigation was based on a letter which the law firm sent to the borrower. The Davis law firm contends that *Heintz* should not be extended to pleadings. However, there is no language within the FDCPA which supports such a construction. Furthermore, the Davis law firm did not explain why the FDCPA should be construed to reach lawyers who falsely represent the amount or legal status of a debt in a collection letter and not to reach the same misrepresentations if included in a complaint.

Furthermore, after the *Heintz* ruling that the FDCPA applies to attorneys, an issue arose as to the applicability of §1692e(11), coupled with §1692g, where the complaint is the initial written communication with the consumer. These provisions impose disclosure requirements in the initial written communication with the consumer or within five days of the initial communication. Through a 1996 amendment (Pub. L. 104-208, 110 Stat. 3009 (9/30/96)), Congress amended §1692e(11) to provide that "this paragraph shall not apply to a formal pleading made in connection with the legal action." This amendment would have been unnecessary if the act did not apply to pleadings. See also footnote 11, infra.

In *Donohue v. Quick Collect, Inc.*, supra, 592 F.3d at 1031-32, the court rejected the argument that the act does not apply because the alleged false statement is set forth within the complaint, and a complaint is not a communication subject to the requirements of §§1692e and 1692f. In concluding that a complaint served directly on a consumer is a communication subject to the requirements of §§1692e and 1692f, the court stated:

Concluding otherwise would put our decision in tension with the Supreme Court's reasoning in *Heintz*. In *Heintz*, Darlene Jenkins defaulted on a loan from a bank. 514 U.S. at 293, 115 S.Ct. 1489. A lawyer from the bank's law firm, George Heintz, wrote a letter to Jenkins's lawyer listing an amount that Jenkins purportedly owed. *Id.*

Jenkins sued Heintz under §§1692e(2) and 1692f. *Id.* Heintz contested the applicability of the FDCPA to his debt-collection efforts because he was a lawyer engaged in litigation. *Id.* at 295. The Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299, 115 S.Ct. 1489. The Supreme Court reasoned that "the plain language of the [FDCPA] itself says nothing about" an "exemption [for lawyers] in respect to litigation." *Id.* at 297, 115 S.Ct. 1489. Nor did it make sense to differentiate between lawyers acting in the capacity of debt collectors and those litigating: "The line...between 'legal' activities and 'debt collection' activities was not necessarily apparent to those who debated the legislation, for litigating, at first blush, seems simply one way of collecting a debt." *Id.*

While the communication at issue in *Heintz* was a letter, not a legal pleading as here, the logic of Heintz controls our analysis. Quick Collect caused Donohue to be served with the complaint to further Quick Collect's effort to collect the debt through litigation. The Supreme Court in *Heintz* stated clearly that the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." 514 U.S. at 299, 115 S.Ct. 1489 (emphasis

added). To limit the litigation activities that may form the basis of FDCPA liability to exclude complaints served personally on consumers to facilitate debt collection, the very act that formally commences such a litigation, would require a nonsensical narrowing of the common understanding of the word "litigation" that we decline to adopt. *Donohue*, 592 F.3d at 1032 (footnote omitted).

Also see *Sayyed v. Wolpoff & Abramson*, supra, 485 F.3d at 231 (if the law firm were correct that conduct in the course of litigation and even formal pleadings were entirely exempt from the act, Section 1692e(11)'s express exemption of formal pleadings would be unnecessary); and *Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F.Supp.2d 795, 805 (D. Minn. 2009) (exemption of formal pleadings from the requirement that the initial written communication notify the consumer that a debt collector is attempting to collect a debt would have been unnecessary if formal pleadings were already outside the reach of the act).

In *Sayyed*, supra, the court stated that rulings of the Court of Appeals for the Fourth Circuit that a litigating attorney comes under the statute's definition of debt collect is consistent with the rulings of other courts of appeals:

All circuits to consider the issue, except for the Eleventh, have recognized the general principle that the FDCPA applies to the litigation activities of attorneys who qualify as debt collectors under the statutory definition. See, e.g., *Goldman v. Cohen*, 445 F.3d 152, 155 (2nd Cir. 2006); *Todd v. Weltman, Weinberg & Reis Co.*, L.P.A., 434 F.3d 432, 446 (6th Cir. 2006); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d

Cir. 2005); *Thomas v. Law Firm of Simpson & Cybank,* 392 F.3d 914, 917 (7th Cir. 2004) (en banc); *Johnson v. Riddle,* 305 F.3d 1107, 1117 (10th Cir. 2002); *Addison v. Braud,* 105 F.3d 223, 224 n. 1 (5th Cir. 1997); but see *Vega v. McKay,* 351 F.3d 1334, 1337 (11th Cir. 2003) (relying on superseded FTC commentary to hold complaint did not constitute initial communication under FDCPA). *Sayyed,* 485 F.3d at 232.

Also see the case law described in the 2009 opinion in *Gallagher,* supra.

> After *Heintz,* most courts to consider the issue have held that common-law immunity for the litigation-related activities of counsel does not overcome the plain language of the FDCPA. See *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 230 (4th Cir. 2007) ("The statutory text makes clear that there is no blanket common law litigation immunity from the requirements of the FDCPA."); *Gionis v. Javitch, Block, Rathbone, LLP,* 238 Fed. Appx. 24, 26-27 (6th Cir. 2007) (no immunity against FDCPA claims based on allegedly misleading affidavit attached to state-court complaint); *Phillips v. Messerli & Kramer, P.A.,* No. 08-4419, 2008 WL 5050127, at *10 (D. Minn. Nov. 20, 2008) ("claims that an attorney has violated the FDCPA do not implicate the litigation privilege"); *Nutter v. Messerli & Kramer, P.A.,* 500 F.Supp.2d 1219, 1223-24 (D. Minn. 2007) (litigation privilege did not bar claim based on alleged misrepresentation in affidavit filed in state court); *Eads v. Wolpoff & Abramson, LLP,* 538 F.Supp.2d 981, 987 n. 7 (W.D. Tex. 2008) (stating, in dicta, that "[e]ven if Eads had premised Wolpoff's [FDCPA] liability upon the state court pleadings, Wolpoff is not entitled to immunity"); *Jenkins v. Gen. Collection Co.,* 538

F.Supp.2d 1165, 1172 (D. Neb. 2008) ("In amending the FDCPA in 1986, Congress effectively withdrew common-law litigation immunity for lawyers who regularly engage in consumer-debt-collection activity through litigation."); *Reyes v. Kenosian & Miele, LLP*, 619 F.Supp.2d 796, 803-04 (N.D. Cal. 2008) ("Given the broad language in *Heintz*, the weight of authority applying the FDCPA to the contents of state court complaints, and an absence of controlling authority or statutory language to the contrary, the court therefore rejects defendants' contention that the FDCPA does not, as a matter of law, ever apply to state court complaints."); *Parkis v. Arrow Fin. Servs.*, LLS, No. 07-C-410, 2008 WL 94798, at *8 (N.D. Ill. Jan. 8, 2008) (holding that litigation privilege did not bar FDCPA claim premised on defendant's filing of time-barred debt-collection lawsuit); *Mello v. Great Seneca Fin. Corp.*, 526 F.Supp.2d 1020, 1023 (C.D. Cal. 2007) (noting that the argument that attorneys are entitled to immunity from FDCPA claims for litigation-related activities "has been soundly rejected by courts"). *Gallagher*, 645 F.Supp.2d at 804-05.

In support of its position that claims under the FDCPA cannot be based on pleadings, the Davis law firm relies on *Beler v. Blatt, Hasenmiller, Leibsker & Moore LLC*, 480 F.3d 470, 473 (7th Cir. 2007); memorandum opinions of the Judges within the United States District Court for the Northern District of Illinois in the following four cases: *Jenkins v. Centurion Capital Corp.*, No. 07 C 3838, 2009 WL 3414248 (N.D. Ill. Oct. 20, 2009); *Krawczyk v. Centurion Capital Corp.*, No. 06-C-6273, 2009 WL 395458 (N.D. Ill. Feb. 18, 2009); *Rosales v. Unifund CCR Partners*, No. 08 C 3533, 2008 WL 5156681 (N.D.

III. Dec. 5, 2008); and *Washington v. North Star Capital Acquisition, LLC*, No. 08 C 2823, 2008 WL 4280139 (N.D. III. Sept. 15, 2008); and a 2003 decision of the Eleventh Circuit in *Vega v. McKay*, 351 F.3d 1334 (11th Cir. 2003).

In *Beler*, supra, the court stated: "[I]t is far from clear that the FDCPA controls the contents of pleadings filed in state court." 480 F.3d at 473. However, in deciding the merits of the case, the court assumed that §1692e applies to complaints, briefs, and other papers filed in state court while postponing a ruling on the issue of whether the FDCPA controls the contents of pleadings to "some future case." *Id.* Since *Beler*, no court has expressly held that FDCPA does not apply to state court pleadings.

Judges sitting in the Illinois Federal District Courts are bound by decisions of the Seventh Circuit. In each of the four Illinois District Court opinions cited by the Davis law firm, the court, while referring to the Seventh Circuit's "suggestion" that the FDCPA does not control pleading requirements in state courts, dismissed the plaintiffs' claims under the FDCPA on other grounds.

In *Vega v. McKay*, supra, the court rejected the plaintiff's contention that the complaint was the initial communication pursuant to 15 U.S.C. §1692g. It ruled that a legal action does not constitute an initial communication, stating that this conclusion was more consistent with the purpose of the act that the term communication as used does not include a legal action or pleading.[11] 351 F.3d at 1336-37.

---

11. A subsequent 2006 amendment to the FDCPA provides that §1692g, requiring specific information to be provided within five days after the initial communication, does not apply to a formal pleading.

Judges sitting in the Wisconsin Federal District Courts are also governed by rulings of the Seventh Circuit. In *Eichman v. Mann Bracken, LLC*, 689 F.Supp.2d 1094 (W.D. Wis. 2010), the plaintiff raised claims under §§1692d-1692f of the FDCPA based on pleadings filed in a state court action. The court stated that the plaintiff's claims raised the issue of the applicability of the FDCPA to state court debt collection litigation.

Since the *Beler* court concluded that it was unnecessary to resolve the issue of whether the claims under the FDCPA may be based on the contents of a pleading, the *Eichman* court considered the weight that other district court judges bound by the decisions of the Seventh Circuit had given to the *Beler* dicta:

> Despite *Beler*, other district courts in the Seventh Circuit have allowed debtors to bring FDCPA claims alleging false statements and unfair acts during state court proceedings. E.g., *Guevara v. Midland Funding NCC-2 Corp.*, 2008 WL 4865550, *5 (N.D. Ill. Jun. 20, 2008) (plaintiff may state FDCPA claim based on alleged misrepresentation and unfair collection practices in state court complaint); *Polzin v. Unifund CCR Partners*, 2008 WL 2324618, *4 (E.D. Wis. Jun. 5, 2008) (granting leave to proceed on a FDCPA claim that creditor falsely stated amount of legal interest associated with debt in state court filings); *Parkis v. Arrow Financial Services, LLS*, 2008 WL 94798 (N.D. Ill. Jan. 8, 2008) (denying summary judgment on FDCPA claim for filing state court complaint that attempted to collect time-barred debt); *Jenkins v. Centurion Capital Corp.*, 2007 WL 4109235, at *2-3 (N.D. Ill. Nov. 15, 2007) (denying motion to dismiss claim alleging failure to attach contract and details of

assignments to state court complaint); *Foster v. Velocity Investments, LLC*, 2007 WL 2461665, at \*2 (N.D. III. Aug. 24, 2007) (denying motion to dismiss claim alleging misstatement of principal balance as including both principal and interest in state court complaint). These courts note that although the Seventh Circuit has questioned the applicability of the FDCPA to state court filings, it has not decided that issue. *Guevara*, 2008 WL 4865550, \*5; *Foster*, 2007 WL 2461665, \*2. Defendants distinguish *Beler* on the additional ground that the plaintiff in that case challenged the form or sufficiency of a state complaint and not any false representations in the pleadings. *Eichman*, 689 F.Supp.2d at 1100.

The court in *Eichman* chose to follow the rulings of these district courts:

> I find the reasoning in these district court cases to be persuasive. Because *Heintz* makes it clear that the conduct of a debt-collection attorney during litigation is subject to review under the FDCPA, an attorney's alleged misrepresentation of a fact or filing of a frivolous counterclaim could be a sufficient basis for an FDCPA suit. In fact, in the past, the Seventh Circuit has found that such conduct violated the FDCPA. E.g., *Veach v. Sheeks*, 316 F.3d 690, 691-92 (7th Cir. 2003) (notice of claim filed in small claims court misleading because it failed to specify amount of debt); *Gearing v. Check Brokerage Corp.*, 233 F.3d 469 (7th Cir. 2000) (state court complaint stated incorrectly that debt collection agency had right of subrogation). *Eichman*, 689 F.Supp.2d at 1100.

SUMMARY

In summary, (1) the statements made in paragraphs 10 of the complaints filed in the underlying action are false representations used in connection with the collection of a debt and are an attempt to collect an amount that is not expressly authorized by the credit card agreement in violation of §§1692e and 1692f of the FDCPA; and (2) the FDCPA applies to allegations within the complaints and other pleadings. For these reasons, I overrule the preliminary objections of the Davis law firm seeking dismissal of plaintiff's second amended complaint.[12]

## ORDER OF COURT

And now, February 18, 2011, it is hereby ordered that defendant's preliminary objections seeking dismissal of plaintiff's second amended complaint are overruled.

---

12. My ruling in the present case governs similar preliminary objections to similar complaints filed in *Nowicki v. Bureaus Investment Group* Portfolio No. 11, LLC, AR10-006592; *Celli v. Square Two Financial Corp.* f/k/a CACH, LLC, AR10-007358; and *Commonwealth Financial Systems v. Williams* (counterclaim), AR10-005411.