**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3194
_____

DARWIN LESHER

v.

LAW OFFICES OF MITCHELL N. KAY, PC;
MITCHELL N. KAY

Law Offices of Mitchell N. Kay, PC,
                                        Appellant


_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-09-cv-00578)
District Judge:   Hon. J. Andrew Smyser
_____

Argued April 13, 2011

BEFORE:  FISHER, JORDAN, and COWEN, Circuit Judges

(Filed:  June 21, 2011  )

Joann Needleman, Esq. (Argued)
Maurice & Needleman
1617 John F. Kennedy Boulevard
One Penn Center, Suite 935
Philadelphia, PA 19103

    Counsel for Appellant

Cary L. Flitter, Esq.
Theodore E. Lorenz, Esq. (Argued)
Andrew M. Milz, Esq.
Lundy, Flitter, Beldecos & Berger
450 North Narberth Avenue
Narberth, PA 19072-1898

Lawrence J. Rosenn, Esq.
Krevsky & Rosen
1101 North Front Street
Harrisburg, PA 17102

Deanna L. Saracco, Esq.
76 Greenmont Drive
Enola, PA 17025

    Counsel for Appellee

Tomio B. Narita, Esq.
Simmonds & Narita
44 Montgomery Street
Suite 3010
San Francisco, CA 94104

Counsel for National Association of Retail
Collection Attorneys, Amicus Appellant

Richard J. Perr, Esq.
Fineman, Krekstein & Harris
1735 Market Street
Mellon Bank Center, Suite 600
Philadelphia, PA 19103

Counsel for ACA International, Amicus Appellant

———————————

OPINION

———————————

COWEN, <u>Circuit</u> <u>Judge</u>.

Darwin Lesher filed a complaint in the United States District Court for the Middle District of Pennsylvania alleging that debt-collection letters he received from the Law Offices of Mitchell N. Kay (the "Kay Law Firm") were deceptive under the Fair Debt Collection Practices Act (the "FDCPA" or the "Act"). The District Court agreed and granted Lesher's motion for summary judgment. The Kay Law Firm now appeals from the District Court's order. For the reasons that follow, we will affirm.

## I. Background

The Kay Law Firm is a law firm that acts as a debt collector. On January 11, 2009, the Kay Law Firm sent a letter to Lesher seeking to recover a debt he owed to Washington Mutual on a home equity loan. The letter was

presented on the Kay Law Firm's letterhead, which displays the words "Law Offices of Mitchell N. Kay, P.C." in large characters at the top of the page. (A040.) The letter, after referencing Lesher's account with Washington Mutual, states as follows:

> Please be advised that your account, as referenced above, is being handled by this office.
>
> We have been authorized to offer you the opportunity to settle this account with a lump sum payment, equal to 75% of the balance due—which is $9,080.52!
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.
>
> If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.
>
> If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

> You are invited to visit our website **www.lawofmnk.com** to resolve this debt privately, or to write to us or to update your personal information.

(Id.)[1] After a large blank space, the letter directs Lesher to "PLEASE ADDRESS ALL PAYMENTS TO" the "Law Offices of Mitchell N. Kay, P.C." at their New York address. (Id.) Immediately below the address, the letter states: "Notice: Please see reverse side for important information." (Id.) A box surrounds this notice, below which is a detachable payment stub.

On the back, the letter sets forth four "notices," including the following two:

> This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.

> At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account.

(A041.)[2]

---

[1] Paragraphs 3, 4, and 5 of the letter are the disclosures required by 15 U.S.C. § 1692g(a)(3), (4), and (5).

[2] The other two notices inform the recipient that: (1) if he is entitled to protection under the United States Bankruptcy

On February 15, 2009, the Kay Law Firm sent a second letter to Lesher. This letter was not printed on the same letterhead, but instead stated in smaller characters at the top that it was from the "Law Offices of Mitchell N. Kay, P.C." (A042.) The letter offers the choice of a six-month repayment plan or a settlement, and again instructs the reader to "see reverse side for important information." (Id.) The back of the letter sets forth the same disclaimers as the first letter. (A043.)

In March 2009, shortly after receiving these letters, Lesher filed a complaint in the District Court against the Kay Law Firm. In the complaint, Lesher alleged that the letters violated, inter alia, section 1692e of the FDCPA, 15 U.S.C. § 1692e (1996), by misleading him to believe that an attorney was involved in collecting his debt, and that the attorney could, and would, take legal action against him.[3]

---

Code, the letter is not an attempt to collect, assess, or recover a claim in violation of the Bankruptcy Code; and (2) if the debtor sends a check with the payment coupon, the Kay Law Firm will complete the payment by electronic debit and destroy the check. (A041.)

[3] The complaint, which was twice amended, included additional claims arising under 15 U.S.C. §§ 1692d, 1692f, 1692g, 1692j, and 1692n. However, Lesher moved for summary judgment as to his claims under §§ 1692e and g only. The District Court granted summary judgment with respect to his § 1692e claim, but denied summary judgment with respect to his § 1692g claim. Lesher decided not to pursue his remaining claims. The only issue presently before this Court is whether the District Court erred in granting

6

Following discovery, the parties filed cross-motions for summary judgment. Upon review, the District Court found that the January 11 and February 15, 2009 letters plainly implied that an attorney was involved in the collection, and implicitly threatened legal action, in violation of § 1692e.[4] Viewing the letters from the perspective of the "least sophisticated debtor," the District Court rejected the Kay Law Firm's contention that the disclaimers on the back of the letters mitigated the impression of potential legal action. The District Court awarded Lesher $1,000 in damages. See 15 U.S.C. § 1692k(a)(2)(A).

The Kay Law Firm now appeals from the District Court's order.[5]

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a District Court's order granting summary

---

summary judgment in Lesher's favor on his § 1692e claim.

[4] The District Court did not specify whether it was finding a violation of § 1692e generally, or violations of subsections (3) or (5), or both.

[5] The National Association of Retail Collection Attorneys (the "NARCA") and the Association of Credit and Collection Professionals (the "ACA") have submitted amici briefs in support of the Kay Law Firm's appeal.

judgment de novo.  <u>EBC, Inc. v. Clark Bldg. Sys., Inc.</u>, 618 F.3d 253, 262 (3d Cir. 2010).[6]

### III.  Discussion

#### A.  FDCPA Background

Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors."  15 U.S.C. § 1692(a).  At that time, Congress was concerned that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy."  <u>Id.</u>  Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  <u>Id.</u> § 1692(e).  After determining that the existing consumer protection laws were inadequate, <u>id.</u> § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act.  <u>Id.</u> § 1692k.

Because the FDCPA is a remedial statute, we construe its language broadly so as to effect its purpose.  <u>Brown v. Card Serv. Ctr.</u>, 464 F.3d 450, 453 (3d Cir. 2006) (citations omitted).  Accordingly, we analyze communications from lenders to debtors from the perspective of the "least

---

[6] The District Court assumed that whether a communication is false and misleading under the FDCPA is a question of law, and neither party challenges this aspect of the District Court's decision on appeal.

8

sophisticated debtor." Id. at 454. "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." Id. at 453 (quoting Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)). "'Laws are made to protect the trusting as well as the suspicious.'" Brown, 464 F.3d at 453 (quoting Federal Trade Comm'n v. Standard Educ. Soc'y, 302 U.S. 112, 116 (1937)).

Bearing this in mind, we note that although the "least sophisticated debtor" standard is a low standard, it "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." Wilson v. Quadramed Corp., 225 F.3d 350, 354-55 (3d Cir. 2000) (internal quotation marks and citation omitted). "Even the least sophisticated debtor is bound to read collection notices in their entirety." Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294, 299 (3d Cir. 2008)

### B. Section 1692e of the FDCPA

Lesher claims that the January 11 and February 15, 2009 letters that he received from the Kay Law Firm violate section 1692e of the FDCPA, which prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The sixteen subsections of section 1692e set forth a non-exhaustive list of practices that fall within this ban. These subsections include:

> (3)  The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> . . .
>
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e.  Because the list of the sixteen subsections is non-exhaustive, a debt collection practice can be a "false, deceptive, or misleading" practice in violation of section 1692e even if it does not fall within any of the subsections. See Clomon, 988 F.2d at 1318.

### C.  Section 1692e Case Law

To determine whether the District Court properly construed section 1692e of the FDCPA, we look to both our own prior opinions, and to opinions from our sister circuits, discussing section 1692e of the FDCPA.

Although we have not had occasion to consider whether the precise type of debt-collection letters at issue in this case violates section 1692e,[7] we have considered whether

---

[7]  The Kay Law Firm emphasizes that its January 11 and February 15, 2009 letters were "settlement letters," not "dunning letters."  While we recognize the distinction between letters that provide an opportunity for settlement in a conciliatory manner and those that contain more hostile demands for payment, we note that both types of

other debt-collection letters comply with this subsection of the Act. For example, in <u>Brown v. Card Service Center</u>, 464 F.3d 450 (3d Cir. 2006), we considered whether a letter from a debt collection agency that warned the debtor of potential legal action violated section 1692e. In that case, Card Service Center ("CSC") sent the plaintiff a letter informing her that, unless she made arrangements to pay her debt within five days, the matter "could" result in referral of the account to CSC's attorney, and "could" result in "a legal suit being filed." <u>Id.</u> at 451-52. The plaintiff sued, claiming that because CSC had no intention of referring her account to an attorney, and no intention of filing a law suit, the letter violated section 1692e's ban on false, misleading, or deceptive communications. <u>Id.</u> at 452. Specifically, Brown claimed that the letter violated subsection (5), which prohibits collection letters from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). The district court dismissed the complaint, determining that because "[t]he letter neither states nor implies that legal action is imminent, only that it is possible," the plaintiff had failed to state a section 1692e(5) violation. <u>Id.</u> at 454.

Upon review, we disagreed, and held that the facts alleged, if proven, could show that the CSC letter was "deceptive" or "misleading" under section 1692e because, in our view, it would be deceptive under the FDCPA for CSC "to assert that it *could* take an action that it had no intention

communications must comply with 15 U.S.C. § 1692e. <u>See</u> <u>Campuzano-Burgos</u>, 550 F.3d at 299-300. Therefore, we fail to see the significance in the distinction here.

11

of taking and has never or very rarely taken before." Id. at 454-55 (emphasis in original).

More recently, this Court considered whether a collection letter falsely implied that it was from a lawyer in violation of section 1692e(3) because it was signed by the "Legal Department" of a collection agency even though none of the employees in that department were lawyers. In that case, Rosenau v. Unifund Corp., 539 F.3d 218 (3d Cir. 2008), Unifund sent a collection letter to the plaintiff demanding payment on a debt he owed to a third party. Id. at 219. The letter stated as follows:

> If we are unable to resolve this issue within 35 days we may refer this matter to an attorney in your area for legal consideration. If suit is filed and if judgment is rendered against you, we will collect payment utilizing all methods legally available to us, subject to your rights below . . . This communication is from a debt collector. This is an attempt to collect a debt . . . .

Id. at 220. The letter was signed by the "Unifund Legal Department," which, despite its name, was comprised of solely non-lawyer employees. Id. Viewing the letter from the perspective of the least sophisticated debtor, we concluded that a debtor receiving the letter might reasonably infer that it was from an attorney even though it was not. Id. at 223. We rejected the idea that the statement that the letter was "from a debt collector" nullified the implication that the letter was from an attorney because, in our view, the categories of "debt collector" and "attorney" are not mutually exclusive. Id. We also disagreed with the district court's

12

conclusion that the letter could not reasonably be interpreted to be *from* an attorney because it stated that Unifund might *refer* the matter to an attorney; we noted that lawyers often refer cases to one another and that this aspect of the letter would not necessarily dispel the impression that the letter was sent by a lawyer employed in Unifund's legal department. Id.[8]

Several of our sister circuit courts have also analyzed the application of section 1692e to debt-collection letters from attorneys. The leading case on whether mass-produced debt-collection mailings by an attorney violate the proscriptions of the FDCPA is Clomon v. Jackson, 988 F.2d 1314 (2d Cir. 1993). In Clomon, a debt collection agency mailed several form collection letters to the plaintiff that were printed on the attorney letterhead of the agency's general counsel, and bore the mechanically reproduced facsimile of

---

[8] This Court's most recent opinion concerning section 1692e is Campuzano-Burgos v. Midland Credit Mgmt., 550 F.3d 294 (3d Cir. 2008), in which we considered whether a collection agency violated section 1692e by sending out letters that were signed by the agency's executives even though none of those executives was personally involved in sending the letters. Id. at 297. We held that the letters, as a whole, were not deceptive under section 1692e because they did not objectively appear to be letters from a corporate executive to an individual; in our view, even the least sophisticated debtor, "possessing some common sense and a willingness to read the entire document with care, would not have believed that he had received a personal communication" from an executive. Id. at 301.

his signature.  Id. at 1316.  Although the attorney approved the form of the letters, and the procedures according to which those letters were sent, the attorney had no direct personal involvement in the mailing of the letters.  Id. at 1317.  The letters contained a variety of threatening statements designed to induce the plaintiff to pay the amount she owed, such as the following: "After [this collection agency] reviews your collection file and previous correspondence sent you, I am suggesting we take the appropriate measures provided under the law to further implement the collection of your seriously past due account."  Id.

The Second Circuit held that the use of the attorney's letterhead and his signature on the collection letters was sufficient to give the debtor the false impression that the letters were communications from an attorney in violation of § 1692e(3).  Id. at 1320.  The Court held that the letters were false and misleading because they were not "from" the attorney in any meaningful sense of the word.  Id.  In reaching this conclusion, the Court found significant the fact that the attorney did not review each debtor's file, did not determine when particular letters should be sent, did not approve the sending of particular letters based upon the recommendations of others, did not see particular letters before they were sent, and did not know the identities of the persons to whom the letters were issued.  Id.; see also Miller v. Wolpoff & Abramson, LLP, 321 F.3d 292, 301 (2d Cir. 2003) (explaining that "[a]lthough there is no dispute that [the defendant law firms] are law firms, or that the letters sent by those firms were 'from' attorneys in the literal sense of that word, some degree of attorney involvement is required before a letter will be considered 'from an attorney' within the meaning of the FDCPA").

14

The Seventh Circuit reached the same conclusion about a similar letter in Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996). There, as in Clomon, the plaintiff had received a series of mass-produced collection letters printed on the letterhead of a law office and including the mechanically reproduced signature of an attorney. Id. at 225. Several of the letters informed the plaintiff that, "[i]f payment is not received, a civil suit may be initiated against you by your creditor." Id. Although the named attorney had approved the general form letter, he did not personally prepare, sign, or review any of the letters sent to the plaintiff; instead, a "legal assistant collector" actually produced the letter using training materials developed by the attorney. Id. The plaintiff claimed that these letters violated § 1692e(3) because the letters were not really "from an attorney." Id. at 229.

The Seventh Circuit agreed and held that an attorney sending a collection letter must be directly and personally involved in the mailing of the letters in order to comply with the strictures of the FDCPA. Id. The Court explained as follows:

> An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.
>
> A letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process

15

through which the letter was sent. That's the essence of the connotation that accompanies the title of "attorney." A debt collection letter on an attorney's letterhead conveys authority. Consumers are inclined to more quickly react to an attorney's threat than to one coming from a debt collection agency. It is reasonable to believe that a dunning letter from an attorney threatening legal action will be more effective in collecting a debt than a letter from a collection agency. The attorney letter implies that the attorney has reached a considered, professional judgment that the debtor is delinquent and is a candidate for legal action. And the letter also implies that the attorney has some personal involvement in the decision to send the letter. Thus, if a debt collector (attorney or otherwise) wants to take advantage of the special connotation of the word "attorney" in the minds of delinquent consumer debtors to better effect collection of the debt, the debt collector should at least ensure that an attorney has become professionally involved in the debtor's file. Any other result would sanction the wholesale licensing of an attorney's name for commercial purposes, in derogation of professional standards[.]

Id. at 229; see also Nielsen v. Dickerson, 307 F.3d 623, 635-38 (7th Cir 2002) (relying on Avila to conclude that collection letters from defendant attorney violated § 1692e(3) and (10) because the attorney was not meaningfully involved in the decision to send the letters).

16

The Second Circuit later clarified its holding in Clomon to explain that an attorney, acting as a debt collector, could avoid liability by including a clear and prominent disclaimer in the collection letter. The collection letter at issue in that case, Greco v. Trauner, Cohen & Thomas, LLP, 412 F.3d 360 (2d Cir. 2005), was printed on the letterhead of "Trauner, Cohen & Thomas, LLP," and stated in pertinent part as follows:

> The firm of Trauner, Cohen & Thomas is a law partnership representing financial institutions in the area of creditors rights. In this regard, this office represents the above named BANK OF AMERICA who has placed this matter, in reference to an original account with [sic] for collection and such action as necessary to protect our client.
>
> At this time, no attorney with this firm has personally reviewed the particular circumstances of your account. However, if you fail to contact this office, our client may consider additional remedies to recover the balance due.
> . . .
>
> Very truly yours,
> Trauner, Cohen & Thomas, LLP

Id. at 361. The plaintiff, relying on Clomon, claimed that Trauner, Cohen & Thomas had violated the FDCPA by sending a debt collection letter, signed by the law firm and on law firm stationary, thereby implying that the firm had

17

analyzed the debtor's case and rendered legal advice to the creditor when it had not.  Id. at 363.

The Second Circuit held that the letter did not violate the FDCPA because, unlike the letter at issue in Clomon, it included a clear disclaimer explaining the limited extent of the law firm's involvement in the collection action.  Id.  at 364-65.  The Court elaborated on its previous holding as follows:

> One cannot, consistent with the FDCPA, *mislead* the debtor regarding meaningful "attorney" involvement in the debt collection process.  But it does not follow that attorneys may participate in this process only by providing actual legal services.  In fact, attorneys can participate in debt collection in any number of ways, without contravening the FDCPA so long as their status as attorneys is *not misleading*.  Put another way, our prior precedents demonstrate that an attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so long as that letter includes *disclaimers* that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

Id. at 364 (emphasis in original).  Because the letter at issue in Greco included a disclaimer that, "[a]t this time, no attorney with this firm has personally reviewed the particular

18

circumstances of your account," the Court concluded that the defendant law firm had not made a "false representation or implication that any individual is an attorney or that any communication is from an attorney with meaningful involvement as an attorney in the debtor's case." Id. at 365 (internal quotation marks and citation omitted).

Notably, the Fifth Circuit recently considered the legality of a debt collection letter from the Kay Law Firm that appears to be the exact same form letter that was sent to Lesher on January 11, 2009. In Gonzalez v. Kay, 577 F.3d 600 (5th Cir. 2009), the Kay Law Firm sent a collection letter to the plaintiff demanding payment of $448.97 on a consumer debt. Id. at 601. The letter, like the January 11, 2009 letter at issue here, was printed on the Kay Law Firm's letterhead. Id. at 602. The letter also contained the same language regarding the debtor's right to contest the debt, and included, on the back, the disclaimer that, "[a]t this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account." Id. The plaintiff brought suit under § 1692e, claiming that the letter was deceptive in that the Kay Law Firm "pretended to be a law firm with a lawyer handling collection of the Account when in fact no lawyer was handling the Account or actively handling the file." Id. According to the plaintiff, the Kay Law Firm is not actually a law firm at all, but a debt collection agency that uses the imprimatur of a law firm to intimidate debtors into paying their debts. Id. at 602-03.

Although the district court dismissed the complaint for failure to state a claim, see Fed. R. Civ. P. 12(b)(6), the Fifth Circuit held that dismissal was premature because the "least sophisticated debtor" might be deceived into thinking that a

19

lawyer was involved in the debt collection despite the disclaimer. After reviewing the reasoning in (among other cases) Clomon, Rosenau, and Greco, the Court explained that, in its view, "the main difference between the cases is whether the letter included a clear, prominent, and conspicuous disclaimer that no lawyer was involved in the debt collection at that time." Id. at 606. According to the Court:

> There are some letters that, as a matter of law, are not deceptive based on the language and placement of a disclaimer. At the other end of the spectrum, there are letters that are so deceptive and misleading as to violate the FDCPA as a matter of law, especially when they do not contain any disclaimer regarding the attorney's involvement. In the middle, there are letters that include contradictory messages and therefore present closer calls.

Id. The Fifth Circuit concluded that this letter fell within the middle ground because, unlike the letter in Greco in which the disclaimer was part of the body of the text on the front page, the disclaimer here was on the back. Id. Thus, according to the Fifth Circuit, the least sophisticated debtor would not learn that the letter was from a debt collector unless he turned the letter over to read the "legalese" on the back. Id. at 607. Accordingly, the Court remanded the matter to the district court for further development of the record. Id. In so doing, the Court added the following precautions to attorney-debt-collectors:

> We caution lawyers who send debt collection letters to state clearly, prominently, and

20

conspicuously that although the letter is from a lawyer, the lawyer is acting solely as a debt collector and not in any legal capacity when sending the letter. The disclaimer must explain to even the least sophisticated consumer that lawyers may also be debt collectors and that the lawyer is operating only as a debt collector at that time. Debt collectors acting solely as debt collectors must not send the message that a lawyer is involved, because this deceptively sends the message that the "price of poker has gone up."

Id.

## D.  Applying the Least Sophisticated Debtor Standard to the Kay Law Firm's Letters

The District Court in this case relied on <u>Brown</u>, <u>Rosenau</u>, <u>Greco</u>, and <u>Gonzalez</u> to conclude that the Kay Law Firm's January 11 and February 15, 2009 letters were misleading under section 1692e of the FDCPA. The District Court found that the least sophisticated debtor, upon receiving these letters, would believe that they had been sent by an attorney who might pursue legal action if he did not pay the debt.[9] The District Court acknowledged that the letters

---

[9]  According to the District Court:

A consumer is reasonably expected to believe that a law firm is comprised of attorneys and that it does legal work. In the context of a consumer debt, a reasonable perception of

21

included a disclaimer notifying Lesher that an attorney had not reviewed his account, but found that the disclaimer did not mitigate the impression of potential legal action. The Kay Law Firm now challenges the District Court's decision.[10]

consumers is that if a consumer debt is being handled on behalf of the lender by a law firm and if the amount of money that the law firm is seeking (or some lesser settlement amount) is not paid, then the lawyer(s) will use the legal process with which they are familiar and for the use of which they are specifically trained to obtain a mandatory order of payment, which order will be enforceable by penalties within the power of courts to impose. The implication that a communication to a consumer concerning a debt is from an attorney has a particular and well-known and well-understood effect. That is explicitly recognized in and incorporated into § 1692e.

Lesher v. Law Office of Mitchell N. Kay, P.C., 724 F. Supp. 2d 503, 509 (M.D. Pa. 2010).

[10] Specifically, the Kay Law Firm argues that, contrary to the District Court's conclusion, the letters: (a) complied with section 1692e(3) because they were indeed from an attorney; (b) complied with section 1692e(5) because they did not threaten legal action; and (c) were not otherwise "false, deceptive, or misleading." We need not reach the question of whether the Kay Law Firm's letters to Lesher violate sections 1692e(3) and (5) because we conclude that they violate

We agree with the District Court that the Kay Law Firm's letters violate section 1692e's general prohibition against "false, deceptive, or misleading" communications because they falsely imply that an attorney, acting as an attorney, is involved in collecting Lesher's debt. In our view, the least sophisticated debtor, upon receiving these letters, may reasonably believe that an attorney has reviewed his file and has determined that he is a candidate for legal action. We do not believe that such a reading would be "bizarre or idiosyncratic." Wilson, 225 F.3d at 354-55 (internal quotation marks and citation omitted).

Nor do we believe that the disclaimers included in the letters, which are printed on the backs, make clear to the least sophisticated debtor that the Kay Law Firm is acting solely as a debt collector and not in any legal capacity in sending the letters. First, in our view, the statement that "[a]t this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account" does little to clarify the Kay Law Firm's role in collecting the debt because it completely contradicts the message sent on the front of the letters—that the creditor retained a law firm to collect the debt.[11] Moreover, as we noted in Rosenau, the statement that

section 1692e's general prohibition against "false, deceptive, or misleading" communications.

[11] We recognize that the Second Circuit held in Greco that the language in this disclaimer sufficiently explained the limited role that the attorneys played in collecting the plaintiff's debt. See 412 F.3d at 366. In viewing the Kay Law Firm letters at issue here, however, we are not convinced that this disclaimer, which—unlike in Greco—was printed on

the letters were "from a debt collector" is a statutorily required notification that "should not be viewed as nullifying any implication that the letter is from an attorney." See 539 F.3d at 223 (explaining that "[b]oth common sense and case law confirm . . . that the categories of 'debt collector' and 'attorney' are not mutually exclusive").

As the Seventh Circuit observed in Avila, "[a]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." 84 F.3d at 229. For this reason, we believe that it was misleading and deceptive for the Kay Law Firm to raise the specter of potential legal action by using its law firm title to collect a debt when the firm was not acting in its legal capacity when it sent the letters. We need not decide whether an attorney debt-collector who sends out a collection letter on attorney letterhead might, under appropriate circumstances, comply with the strictures of the Act by including language that makes clear that the attorney was not, at the time of the letter's transmission, acting in any legal capacity. The only question before us today is whether the Kay Law Firm's January 11 and February 15, 2009 letters to Lesher comply with the Act. For the reasons set forth above, we hold that they do not.

## IV. Conclusion

---

the back of the letters, effectively mitigated the impression of attorney involvement. See Gonzalez, 577 F.3d at 607 (distinguishing the letter in Greco from the Kay Law Firm's letter based on the position and context of the disclaimer).

We will affirm the District Court's order granting summary judgment in Lesher's favor with respect to his 15 U.S.C. § 1692e claim.

*Lesher v. Law Offices of Mitchell N. Kay, P.C., et al.*,
No. 10-3194
JORDAN, Circuit Judge, dissenting:

The sole question for us to answer in this appeal is whether the least sophisticated consumer, after reading the debt collection letters at issue, would believe that an attorney, acting as such, was involved in the collection process. Because I disagree with the Majority's conclusion and would hold that even the least sophisticated consumer would not be misled as the plaintiff and the Majority contend, I respectfully dissent.[1]

The least-sophisticated-consumer standard is meant to comport with the purpose of the Fair Debt Collection Practices Act ("FDCPA") to protect all consumers, "the gullible as well as the shrewd." *Clomon v. Jackson*, 988 F.2d

---

[1] The case of *Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009), raised the same question with respect to a debt collection letter substantively indistinguishable from the letter at issue here. The Honorable E. Grady Jolly dissented in that case, opining that the debt collection letter did not violate 15 U.S.C. § 1692e. *Id.* at 607-12 (Jolly, J. dissenting). Consistent with the reasoning in *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360 (2d Cir. 2005), Judge Jolly observed that the letter was best seen as sufficiently clear to tell the least sophisticated consumer that an attorney, acting in the role of an attorney, had not been involved in the collection effort. *Gonzalez*, 577 F.3d at 607-09 (Jolly, J. dissenting). I am persuaded by Judge Jolly's thoughtful analysis and endeavor to echo it here.

1

1314, 1318 (2d Cir. 1993). While the standard surely protects naïve consumers, it is also supposed to protect debt collectors by "prevent[ing] liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (internal quotation marks and citation omitted). My colleagues in the Majority give this important aspect of the standard only a nod.

Under our precedents, attorneys are permitted to participate in debt collection, including the sending of debt collection letters, without running afoul of the FDCPA. *See Crossley v. Lieberman*, 868 F.2d 566, 569-70 (3d Cir. 1989) (acknowledging attorney participation in debt collecting and discussing the FDCPA strictures on, not prohibition of, that participation); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) (holding that an attorney acting as a debt collector violated the FDCPA by misstating the debtor's legal rights in the collection letter, not, implicitly, by merely sending the letter). They must, however, tread carefully. "Abuses by attorney debt collectors are more egregious than those of lay collectors because a consumer reacts with far more duress to an attorney's improper threat of legal action than to a debt collection agency committing the same practice." *Crossley*, 868 F.2d at 570. Indeed, because "[a] debt collection letter on an attorney's letterhead conveys authority and credibility," there is inherent intimidation in correspondence of that kind. *Id.*

Consistent with that concern, the United States Court of Appeals for the Second Circuit has explained that a debt

2

collection letter signed by a law firm or appearing on the firm's letterhead "implies – *at least in the absence of language to the contrary* – that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent," *Clomon*, 988 F.2d at 1321 (emphasis added), and thus, unless the attorney actually had formed a legal opinion, would violate the FDCPA's prohibition against "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt," 15 U.S.C. § 1692e (10).[2]  However, the Second Circuit has also

---

[2]  Section 1692e provides a non-exclusive list of conduct that violates that section.  Appellee argues that three of the examples of violative conduct listed in § 1692e are implicated here:

> (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

> \*\*\*

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

> \*\*\*

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

held in *Greco v. Trauner, Cohen, & Thomas, L.L.P.*, that that implicit message of attorney involvement may be clarified by the use of proper disclaimers "connot[ing] far less actual attorney involvement [and thus] satisfying the FDCPA's requirements." 412 F.3d 360, 364 (2d Cir. 2005).

For example, in *Greco*, the debtor claimed that a collection letter he received from a law firm left him with the false impression that an attorney had reviewed his account and formed an opinion regarding the debt. *Id*. at 362. This letter was printed on law firm stationary, and the firm's name was used as a signature. *Id.* at 361. The letter further implied the involvement of attorneys, referring to the creditor as "our client," stating that the firm "represent[ed]" the creditor in "this matter," and warning of "additional remedies." *Id.* But the letter also contained the following disclaimer: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Id.*

The *Greco* Court acknowledged the letter's implication that an attorney, acting as an attorney, had been involved, but the Court noted that "the implied level of attorney involvement is just that – implied." *Id.* at 364. The implication could be overcome, the Court explained, by a clear disclaimer. *Id.* The Court concluded that the disclaimer at issue was clear enough for the least sophisticated consumer to understand that no one involved in the debt collection to that point had had "meaningful involvement as an attorney." *Id.* at 365. In summary, the Second Circuit held:

> [A]n attorney can, in fact, send a debt collection letter without being meaningfully involved as an attorney within the collection process, so

4

> long as that letter includes *disclaimers* that should make clear even to the "least sophisticated consumer" that the law firm or attorney sending the letter is not, at the time of the letter's transmission, acting as an attorney.

*Id.* at 364.

In *Gonzalez v. Kay*, the United States Court of Appeals for the Fifth Circuit faced essentially the same question faced by the Second Circuit in *Greco*. The collection letter's content, including its disclaimer regarding attorney involvement, tracked that of the *Greco* letter.[3] *Gonzalez*, 557 F.3d at 602. However, the panel majority in *Gonzalez* concluded that the letter was misleading because, unlike the letter in *Greco*, which had the disclaimer on the front, the disclaimer was on the back of the letter. *Id.* at 606. The *Gonzalez* majority further opined that the disclaimer was "legalese" and inconsistent with the implicit message communicated by the law firm's letterhead on the front of the page. *Id.* at 607.

The dissent in *Gonzalez*, however, pointed out that the disclaimer "[did] not contain a single legal term" and that a "reasonable unsophisticated consumer, whom we assume can read, could not possibly have trouble understanding it." *Id.* at 608 (Jolly, J., dissenting). The dissent further noted that the majority's concern over the placement of the disclaimer could

---

[3] The disclaimer read: "At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account." *Gonzalez*, 577 F.3d at 602.

5

only provide a meaningful basis for reaching a different result than in *Greco* if one assumes "that an unsophisticated consumer would not turn the letter over," *id.* at 608-609, which was an untenable assumption given the large notice on the letter's front page stating: "Notice: Please see reverse side for important information," *id.* at 609. As rightly put by the dissent, "[W]hen a prominent instruction in the body of the letter warns that there is important information on the reverse side, a reasonable reader, even if unsophisticated, would turn the paper over and read the back." *Id.* at 609 (internal quotation marks omitted). Thus, read in its entirety, the letter could not confuse the least sophisticated consumer regarding an attorney's involvement. *Id.*

The *Gonzalez* dissent is exactly correct, and I regret that I too am required to dissent rather than be part of a majority opinion recognizing that the words "least sophisticated" do not mean "illiterate" or "completely irresponsible." The correspondence at issue here features basically the same plain language disclaimer as was at issue in both *Greco* and *Gonzalez*: "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." (App. at 41, 43.) Without legal mumbo jumbo, that disclaimer tells any reasonable reader, including the least sophisticated, that, "while this was a letter from a law firm, no attorney had specifically examined the recipient's account information, and hence no attorney had yet recommended filing a lawsuit against the creditor." *Greco*, 412 F.3d at 362-63. Moreover, like the letter in *Gonzalez*, the letter here does not mention "clients," "representation," or "other jargon suggesting lawyer involvement." *Gonzalez*, 577 F.3d at 608 (Jolly, J.,

dissenting). Thus, it is "significantly less suggestive of attorney involvement" than the *Greco* letter. *Id*.

Once upon a time, we held that, "[a]lthough established to ease the lot of the naïve, the [least sophisticated consumer] standard does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008). We have strayed far from that ruling today. To say that the least sophisticated consumer would not flip the page to read the entire letter, particularly when prompted to do so by a conspicuous notice on the front of the letter, or to say that one could be confused about the level of attorney involvement despite the plain statement that no legal review had occurred, is to permit – indeed to encourage – the kind of "bizarre or idiosyncratic interpretation[] of collection notices," *id.* (internal quotation marks omitted), we have previously condemned. "Rulings that ignore these rational characteristics of even the least sophisticated debtor and instead rely on unrealistic and fanciful interpretations of collection communications" frustrate the express purpose of the FDCPA to "'insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Id*. (quoting 15 U.S.C. § 1692(e)).

Although the Majority claims to eschew deciding whether a law firm can ever be clear enough in a disclaimer to overcome the effect of sending out a debt collection notice on law firm letterhead, the practical effect here is clear. Law firms take an extraordinary risk in sending a collection letter, no matter how conciliatory or how plain their prose.

7