**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1754
_____

DANIEL L. TABB, JR.,
                              Appellant

v.

OCWEN LOAN SERVICING, LLC.

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-17-cv-01124)
District Judge:  Honorable Colm F. Connolly

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 8, 2019
Before:  GREENAWAY, Jr., RESTREPO, and FUENTES, Circuit Judges

(Opinion filed: January 10, 2020)
_____

OPINION[*]
_____

PER CURIAM

Daniel Tabb appeals from the District Court's order dismissing his complaint

alleging claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

et seq.  For the following reasons, we will affirm in part, vacate in part, and remand for further proceedings.

In 2014, the United States Bankruptcy Court for the District of Delaware granted Tabb and his wife a discharge from their personal debts, including a mortgage loan on their Delaware home, pursuant to Chapter 7 of the Bankruptcy Code.  See 11 U.S.C. § 727.[1]  In 2017, Tabb filed a complaint against Ocwen Loan Servicing, LLC, the servicer of his mortgage, alleging that, in an attempt to collect on the discharged mortgage debt, it sent five separate communications to him in 2016 which were false and misleading, and violative of the FDCPA.[2]  The communications included a notice of "Payoff Quote," a "Response Letter – Loss Mitigation Option(s) are Enclosed," two "Mortgage Account Statement[s]" and a "Verification of Mortgage Account."

---

[1] The bankruptcy trustee had abandoned the Tabbs' property that was encumbered by the mortgage debt.  The bankruptcy discharge did not prevent the mortgage holder, The Bank of New York (BONY), from enforcing its mortgage lien through foreclosure.  See Johnson v. Home State Bank, 501 U.S. 78, 83 (1991) (stating that a discharge under Chapter 7 "extinguishes only 'the personal liability of the debtor,'" and that the Bankruptcy Code "provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy" (quoting 11 U.S.C. § 524(a)(1) and citing 11 U.S.C. § 522(c)(2))).

[2] Tabb alleged that the communications violated various provisions of the FDCPA, including 15 U.S.C. § 1692e(2)(A) which prohibits "the false representation of" either "the character, amount, or legal status of any debt;" 15 U.S.C. § 1692e(5), which prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken; and 15 U.S.C. § 1692e(10), which prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

2

The District Court determined that the complaint was subject to dismissal for failure to state a claim. It dismissed the complaint with prejudice after determining that leave to amend would be futile. This appeal ensued.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the dismissal of a complaint for failure to state a claim, see Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). To survive dismissal, a complaint must "state a claim to relief that is plausible on its face" by including facts which "permit the court to infer more than the mere possibility of misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

The FDCPA is a consumer protection statute that "imposes open-ended prohibitions on, inter alia, false, deceptive or unfair" debt-collection practices. Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 587 (2010) (quotation marks and citation omitted). To state a claim under the statute, a plaintiff must establish that "(1) she is a consumer; (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." Jensen v. Pressler & Pressler, 791 F.3d 413, 417 (3d Cir. 2015) (quoting Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014)). Although the FDCPA does not define "debt collection," we have recognized that its substantive provisions "make clear that it covers conduct 'taken in connection with the collection of any debt.'" McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 245 (3d Cir. 2014) (citation omitted). This includes any "activity undertaken for the general purpose of

3

inducing payment." Id. The demand for payment need not be explicit; "communications that include discussions of the status of payment, offers of alternatives to default, and request for financial information" may constitute debt collection activity. Id. at 245-46.

Generally, we employ an objective standard in determining whether the "least sophisticated debtor" would be misled by the communication. Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008). This standard is "lower than the standard of a reasonable debtor" but "preserv[es] a quotient of reasonableness and presume[es] a basic level of understanding and willingness to read with care." Id. (citation omitted).

The District Court dismissed the complaint after determining that Ocwen was a "debt collector" within the meaning of the FDCPA, but that the communications were sent for informational purposes only and "not in connection with the collection of any debt." In reaching the latter conclusion, the Court principally relied on the fact that each communication contained the following disclaimer – a debt collection notice followed by a bankruptcy disclosure:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.

This disclaimer, however, does not automatically insulate the communication from liability under the FDCPA. Rather, the District Court was required to consider the context of the disclaimer, including its placement within, and the content of, the

communication, which is critical to determining whether the claim comes within the scope of the FDCPA. See Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 386 & n.3 (7th Cir. 2010); Gonzalez v. Kay, 577 F.3d 600, 607 (5th Cir. 2009). When so considered, not all of the claims are subject to dismissal.

In Count I of the complaint, Tabb alleges that a communication sent on September 2, 2016, titled a "Payoff Quote," misrepresented the character, status, and amount of his debt, threatened to take legal action that Ocwen did not intend to take, and used false misrepresentations and deceptive means in an attempt to collect a debt in violation of 15 U.S.C. §§ 1692(2)(A), 1692e(5) and 1692e(10). In deciding whether Tabb stated a claim for relief, the District Court properly considered the "Payoff Quote" document. See In re: Rockefeller Center Properties, Inc. Securities Litig., 184 F.3d 280, 287 (3d Cir. 1999) (on motion to dismiss, court may consider certain narrowly defined types of material including items that are integral to or explicitly relied upon in the complaint). The Court determined that it was not sent in connection with the collection of a debt because the debt collection/bankruptcy disclosure disclaimer was included on the bottom of each page, making clear that it was sent for informational purposes only. However, the copy of the "Payoff Quote" submitted in support of the complaint is faint and illegible; it therefore cannot be discerned whether the document, when read as a whole, would support Tabb's claim. At the motion-to-dismiss stage, the District Court must accept the facts as alleged as true. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Even assuming that, without the document, the complaint did not allege sufficient facts to state a claim for relief, the District Court should have dismissed the claim without

5

prejudice and allow leave to amend. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002) (noting that a court should not dismiss pro se complaints without granting leave to amend unless "amendment would be inequitable or futile").

Counts III and IV of the complaint allege that two mortgage statements sent by Ocwen violated §§ 1692(2)(A), 1692e(5) and 1692e(10). The District Court concluded, and Ocwen contends on appeal, that it did not violate FCDPA because, as servicer of the mortgage lien, it was *required* to provide mortgage statements to Tabb. See 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(1)(2). Although the Truth in Lending Act generally requires creditors to send periodic statements to mortgage debtors for each billing cycle, the Consumer Financial Protection Bureau (CFPB) has clarified that periodic statements are *not* required if the borrower's mortgage debt has been discharged in bankruptcy. See Amendments to the 2013 Mortgage Rules Under the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z), 78 FR 62993-01.

The District Court also determined that the statements were sent merely "to place [Tabb] on notice of a potential foreclosure action." We disagree. The statements listed the amount due in red, a due date of "Due Now," the balances, and interest rates. They also provided, on the back, "Payment and Correspondence Addresses," "[Five] Convenient Payment Options," and payment processing information. At the bottom of the pages, both mortgage statements include a section titled "Important News" which includes information regarding how payments are to be applied and about changes in the monthly payment amounts. In between, it advises that "[o]ur records indicate that your

6

loan is in foreclosure.  Accordingly, this statement may be for informational purposes

only."  The notice continues:

> [y]our loan has been accelerated (the past due balance, all
> fees, and your remaining principal balance is now due in
> full).  This statement is not considered a payoff quote – you
> are still responsible for any additional fees and expenses that
> post to your account after the statement date.  . . . You can still
> reinstate your loan (bring your account to a current status) and
> avoid foreclosure.  The amount required to reinstate your loan as
> of the date of this statement is listed above.  To reinstate your
> loan, send a CERTIFIED payment (cashier's check, bank check
> title check, attorney's escrow check or wire transfer) . . . Our
> records indicate that you have filed for bankruptcy protection.
> This statement applies to our lien on the subject mortgaged
> property and is being provided for informational purposes only.
> If any payments are remitted, please include the coupon below . . .

On the back, the statements include a section titled "Important Information," the first

subsection of which, titled "Important Notice," included the debt collection

notice/bankruptcy disclosure disclaimer.

Although the statements include these disclaimers, their placement – on the back

or buried among boilerplate payment and loan information – mitigates their effectiveness.

See, e.g., Lesher v. Law Offices of Mitchell N. Kay, PC, 650 F.3d 993, 1003 & n.11 (3d

Cir. 2011).  Because Ocwen was not required to send these statements, Tabb has alleged

sufficient facts to show that the nature of the statements, when read as a whole, is to

induce mortgage payments, and that the least sophisticated debtor could plausibly believe

they were sent "in connection with the collection" of a debt.  Because it stated a plausible

claim for relief under the FDCPA, the claim was wrongfully dismissed.

7

We agree with the District Court that the remaining claims were subject to dismissal with prejudice. Count II concerns a communication titled "Response Letter – Loss Mitigation Option(s) are Enclosed," which Tabb alleged violated §§ 1692e(5) and (10). The letter states that Ocwen "has completed the review of the application for assistance and the financial information provided" and is "able to offer the following loss mitigation options." It appears that the District Court determined that the document was sent in response to a query by Tabb. However, Tabb specifically alleged in his complaint that he "never applied for a loan modification," nor did he request one. Compl. At ¶ ¶ 150, 151. The District Court was required to accept that fact as true. Phillips, 515 F.3d at 233. Nevertheless, the letter makes no demand for payment, repeatedly makes clear that Tabb can avoid foreclosure if he "accepts" the mitigation option, and the debt collection/ bankruptcy disclosure disclaimer is set off and displayed at the bottom of every page of the 18-page letter. Even the least sophisticated debtor would understand that the letter was not sent in connection with the collection of a debt.

Finally, the document titled "Verification of Mortgage Account" (Count V), dated November 8, 2016, was not sent by Ocwen in connection with the collection of a debt. The document indicates that it was sent in response to a request for a "Verification of Mortgage," a fact which Tabb has not disputed. Moreover, the document does not demand payment; it provides general information regarding the mortgage account, lists a due date of May 1, 2014 (which is the same date as the "Last Pay Date"), and includes the debt collection notice/bankruptcy disclosure disclaimer, by itself, at the bottom of the page.

8

In light of the foregoing, we will affirm the District Court's order dismissing Counts II and V with prejudice, vacate its order dismissing Counts I, III and IV, and remand the matter for further proceedings consistent with this opinion.